UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
JAMES BELLAMY,                          :
                                        :
                     Plaintiff,         :      16 Civ. 772 (DLC)
                                        :
           -v-                          :      OPINION AND ORDER
                                        :
CITY OF NEW YORK; HAZEL JENNINGS,       :
Chief of Security Operations; ANDREA    :
HALL, Executive Officer of O.S.I.U.;    :
ANNA PRESLEY, Captain of O.S.I.U.;      :
JANE GAMBLE, Bronx Court Captain; JANE  :
LITTLE, Correction Officer; and JANE    :
SOTO, Correction Officer, individually  :
and in their official capacities,       :
                                        :
                     Defendants.        :
-------------------------------------- X

APPEARANCES:

For the plaintiff:
Pro Se James Bellamy

For the defendants:
Agnetha Elizabeth Jacob
New York City Law Department
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

     Through a complaint received on February 2, 2016, James

Bellamy ("Bellamy") alleges violations of his rights pursuant

to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments by

correctional officers and supervisors while he was a pretrial

detainee at the Manhattan Detention Complex (the "MDC").  On

July 15, 2016, the defendants moved to dismiss the complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  For the
following reasons, the defendants' motion is granted.

## Background

These facts are taken from the complaint and the exhibits
attached to it, unless otherwise noted.  At all relevant times,
Bellamy has been and is in the custody of the New York City
Department of Correction (the "DOC") as a pretrial detainee.
By order dated June 17, 2014 (the "Detention Order"), Justice
Steven Barrett of the New York Supreme Court, Bronx County,
imposed a range of conditions upon Bellamy's detention,
including restrictions on Bellamy's movement and
transportation.[2]  In particular, the Detention Order required
that the DOC transport Bellamy in handcuffs and apart from
other inmates "in order to assure, to the extent possible, that
he is unable to converse with other inmates or to pass any
threats."  It also required the DOC to search Bellamy
"immediately prior to leaving the facility where he is housed
and promptly upon his return to the facility."

_____

[1] Officer Jane Soto ("Soto") had not yet appeared in this action
at the time of the other defendants' motion.  By letter dated
December 15, 2016, Soto sought and was granted leave to join in
the motion.

[2] On November 14, 2016, the Honorable James C. Francis ordered
that the Detention Order be filed with this Court under seal.
The Court takes judicial notice of the Detention Order pursuant
to Federal Rule of Evidence 201.

Chief of Security Operations Hazel Jennings ("Jennings") reviewed the Detention Order and designated Bellamy as a Centrally Monitored Case ("CMC") subject to non-routine restraints during transportation, including a waist chain and leg irons.  These restraints were not among the ones enumerated in the Detention Order.  Bellamy asserts that, in violation of DOC policy, Jennings did not provide Bellamy with a hearing to address imposition of these restraints.  Executive Officer of the Operations Security Intelligence Unit ("OSIU") Andrea Hall ("Hall") served Bellamy with a form indicating that Hall had conducted an initial review of Jennings' determination, as well as recurring review forms every 28 days thereafter.  Bellamy speculates that Hall did not actually conduct the reviews.

On July 31, 2015, Officers Jane Little ("Little") and Jane Soto ("Soto") arrived to transport Bellamy from the Bronx County Supreme Court back to the MDC.  Little and Soto sought to restrain Bellamy using handcuffs and a black security cuff box (a "cuff box"), which is typically used on CMC-designated detainees.  Bellamy informed Little and Soto that he had previously sustained a wrist injury as the result of being restrained in a cuff box.  He also informed them that neither the Detention Order nor the form issued by Jennings required the use of a cuff box and requested that one not be used during the transport.  Little and another correctional officer each

called OSIU Captain Anne Presley ("Presley") to inquire about
Bellamy's request, and Presley determined that Bellamy would be
restrained using a cuff box and, if necessary, physical force
would be used to secure the box.  Over Bellamy's objections,
Little and Soto put the cuff box on him.  Even before boarding
the transport van, Bellamy demonstrated to Soto that the box
was causing his hands to swell.  The swelling continued, and
Bellamy was in pain and lost all feeling in his hands.  He
received medical attention upon arrival at the MDC.

On October 5, 2015, Bellamy returned to the Bronx County
Supreme Court, where Captain Jane Gamble ("Gamble") directed
officers to perform several searches on him, including (1) a
scan by a body-orifice security scanner, (2) a pass through a
metal detector, (3) an X-ray scan of his shoes, and (4) a strip
search.  After clearing the first three of these scans, Bellamy
objected to the strip search.  He explained to Gamble that on a
previous occasion he had successfully challenged a strip search
in an adjudication hearing, at which it was determined that a
strip search was neither required by the Detention Order nor
reasonable in light of the other search methods imposed.
Nevertheless, Gamble insisted upon a strip search on the basis
that Bellamy had a CMC classification, and she threatened to
use physical force and pepper spray to effect the search.  The

strip search was conducted in view of the facility's security camera.

Bellamy attempted on five occasions between July and October 2015 to appeal his CMC designation, detailing the aforementioned non-routine restraints and strip search.  He received no response to his appeals, and no due process hearing was ever conducted concerning the CMC designation.

Bellamy filed his complaint on February 2, 2016.  He brings claims pursuant to 42 U.S.C. § 1983 for constitutional violations arising from his CMC designation, the use of additional restraints, and the strip search.  The defendants filed their motion to dismiss on July 15.  Judge Francis granted two requests by Bellamy to extend the time for him to respond to the defendants' motion, ultimately until October 31.  To date, Bellamy has not filed an opposition.  This action was reassigned to this Court on November 22, 2016.

## Discussion

When deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009).  "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief."

Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir.
2014); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(citation omitted) ("[A] complaint must contain sufficient
factual matter, accepted as true, to state a claim for relief
that is plausible on its face.").  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Parkcentral
Glob. Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208
(2d Cir. 2014) (per curiam) (citation omitted).  As a pro se
litigant, Bellamy is entitled to "special solicitude," and the
court will construe the "complaint to raise the strongest
claims that it suggests." Williams v. Priatno, 829 F.3d 118,
122 (2d Cir. 2016) (citation omitted).

**I.   Use of a Cuff Box**

     Bellamy challenges the July 31, 2015 use of a cuff box by
Little and Soto as a violation of his due process rights.  The
Fourteenth Amendment's Due Process Clause protects pretrial
detainees from punitive restrictions or conditions. Turkmen v.
Hasty, 789 F.3d 218, 237 (2d Cir. 2015), cert. granted, 137 S.
Ct. 293 (2016) (mem.).  To state a claim for a violation of
that right, a plaintiff must "plausibly plead" that the
defendants, "(1) with punitive intent, (2) personally engaged
in conduct that caused the challenged conditions of

confinement." Id. at 237-38.  A punitive intent may be shown
expressly, or it may be inferred if "the challenged
governmental action is not rationally related to a legitimate
governmental objective or . . . is excessive in relation to
that purpose." Kinglsey v. Hendrickson, 135 S. Ct. 2466, 2473-
74 (2015).  In assessing whether the use of force against a
pretrial detainee is excessive, the standard "is solely an
objective one." Id. at 2473.  The pretrial detainee must
plausibly allege that the force used was "objectively
unreasonable." Id.

The plaintiff has failed to plausibly allege that the
defendants acted with punitive intent in using a cuff box in
connection with their implementation of Justice Barrett's
Detention Order.  The plaintiff has not pleaded facts from
which it could be inferred that the use of the cuff box was not
rationally related to the defendants' duty to comply with the
Detention Order that Bellamy be transported in handcuffs nor
that it was objectively unreasonable.

## II.  Strip Search

Bellamy alleges that the October 5, 2015 strip search,
conducted in a room with a camera and no curtains, violated his
Fourth Amendment rights.  To determine whether an isolated
search of a pretrial detainee was reasonable, a court "must
consider [1] the scope of the particular intrusion, [2] the

manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." Harris v. Miller, 818 F.3d 49, 58 (2d Cir. 2016) (per curiam) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)).  It is beyond dispute that jail officials may search pretrial detainees for contraband.  See id. at 62.  A strip search, however, "is a serious invasion of privacy."  Id. at 58 (citation omitted).

The defendants rely on the Detention Order to justify the strip search.  In that Order, Justice Barrett determined that Bellamy presented a serious risk to potential witnesses.  The defendants argue that in such circumstances, the plaintiff has failed to plead a violation of his Fourth Amendment rights. Although a Fourth Amendment claim regarding a strip search requires a fact-intensive inquiry, id. at 57-63, here the plaintiff has failed to plead a plausible claim that his rights were violated.  He does not, for instance, allege that the strip search was conducted in a particularly abusive manner. While he does mention that the search was conducted in a room with a security camera, there is no basis to find that the presence of a camera, by itself, was unreasonable.  Indeed, the presence of cameras may assist prisoners by ensuring that government officials do not abuse prisoners while conducting searches.

## III. Procedural Due Process

Finally, Bellamy claims that his procedural due process rights were violated.  He alleges that DOC regulations required a hearing to address the DOC's use of non-routine restraints and that no such hearing was ever held.  In order to state a procedural due process claim, a plaintiff must identify some protected liberty interest of which he has been deprived.  See Dist. Att'y's Office v. Osborne, 557 U.S. 52, 67 (2009).  Such liberty interests may arise from jail regulations where the regulations place "substantive limitations on official discretion."  Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 461-62 (1989).

Neither party has identified an applicable DOC regulation. Bellamy may be referring to DOC Directive #4505R.  See Stephens Decl. Ex. 17, Hunter v. City of New York, No. 10 Civ 3532, 2015 WL 5697218 (S.D.N.Y. Sept. 28, 2015), ECF No. 133-17. Directive #4505R states that "designation of CMC status alone [does not] require that the inmate be provided with a due process hearing."  Id. at § II(B).  "However, as a separate decision, if the facility determines that," among other things, non-routine restraints are to be imposed during transportation, "th[e] inmate should have, in addition to the processes

9

required by this Directive, a due process hearing as required by (the forthcoming) Directive #4914."[3]  Id.

As discussed above, a set of non-routine restraints for transporting Bellamy to and from court was imposed on Bellamy after the state court judge presiding over Bellamy's criminal prosecution entered the Detention Order.  The use of these particular non-routine restraints was closely related to the restrictions imposed on Bellamy's transportation by the Detention Order.  Given this close connection, it cannot fairly be said that the facility "determine[d]" in "a separate decision" that these restraints should be used.  Thus, even assuming that Directive #4505R creates a liberty interest in a due process hearing in cases where a DOC facility independently determines that non-routine restraints are to be imposed, Bellamy has no such interest here.  Accordingly, his procedural due process claim must fail.

## IV.  Municipal Liability

For the reasons stated above, Bellamy has not plausibly alleged that any of his constitutional rights were violated. In the absence of any underlying constitutional violation, Bellamy's claims for municipal liability against the City of

---

[3] The Court has been unable to locate any DOC Directive #4914 that describes the hearing required by Directive #4505R.

New York are also dismissed.  <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006).

## Conclusion

The defendants' July 15, 2016 motion to dismiss the complaint is granted.  The Clerk of Court is directed to close the case.

Dated:     New York, New York
           March 13, 2017

DENISE COTE
United States District Judge